## HALL v. PENLEY BROS. CO.

No. 970.

District Court, D. Maine, S. D.
Feb. 23, 1935.

See, also, 8 F. Supp. 524.

Verrill, Hale, Booth & Ives, of Portland, Me. (Robert Hale, of Portland, Me., of counsel), for plaintiff in error.

Frank H. Haskell, of Portland, Me., for defendant in error.

PETERS, District Judge.

This is a suit in equity asking for an accounting of the number of patent clothespins manufactured and sold by the defendant under letters patent of the United States No. 1382931, issued to the plaintiff's testator, who, in his lifetime, granted an exclusive license to the defendant for the life of the patent in return for certain royalties to be paid by the licensee.

The defendant has filed an answer and a counterclaim and later a motion to dismiss and for judgment on the counterclaim.

The plaintiff has filed a motion to strike out certain parts of the answer and all of the counterclaim, and later a reply to the counterclaim.

The matter has been submitted on the record and pleadings, and one bit of evidence consisting of the docket entries in an infringement suit, hereinafter referred to, commenced in Vermont.

The defendant contends that the case shows such a breach of the license agreement on the part of the plaintiff as to excuse nonperformance by the defendant of its agreement to pay royalties and furnish a basis for a counterclaim for damages.

1. As to the alleged breach of agreement, I find the following pertinent facts:

The license agreement provided, among other things, that the licensee should use its best endeavors to detect any infringement of the patent, and upon discovery of evidence of such infringement the licensee was permitted to take necessary proceedings to defend the patent at its own expense, in which event "the inventor agrees to render to the licensee every assistance in his power, except financial assistance, in helping the licensee to protect and defend" the patent.

It seems that a supposed infringement in Vermont by one Swezey was discovered and the defendant arranged with the plaintiff's testator in his lifetime to commence suit for infringement; but it was not begun until after his death, and when entered, in August, 1932, was in the name of his executrix, the plaintiff herein, together with the defendant herein, the licensee, as co-plaintiff against Swezey the alleged infringer. Answer was filed in the Vermont suit and routine proceedings had, including the filing of interrogatories. The suit is still pending on the docket of the United States District Court in Vermont, and apparently can be set for hearing at any time. The last docket entry, in October, 1932, shows filing of defendant's answers to plaintiff's interrogatories.

On January 3, 1933, Mrs. Hall, the plaintiff herein and one of the plaintiffs in the Vermont suit, wrote Penley Bros. Company, the defendant herein, stating that she repudiated any agreement or understanding of her testator whereby the Vermont suit was to be brought in his name as a coplaintiff with Penley Bros. Company, and goes on to say: "I have instructed Mr. Spear, orally and in writing, to dismiss without prejudice the patent suit brought in my name as executrix and in the name of Penley Brothers Company v. Christopher Swezey Inc., in the United States District Court for the District of Vermont. My father was not informed of some material facts in connection with this patent suit, and neither was I, and I hereby repudiate and rescind any and all action that has been taken in connection with the patent suit, in the name of my father or myself, except the dismissal thereof."

Penley Bros. Company replied, under date of January 12, 1933, acknowledging receipt of the letter from Mrs. Hall, and further saying:

"We cannot now conceive what material facts your father and yourself were

not informed about or not made acquainted with. You must recall that the infringement by and competition of Swezey was discussed with your father and yourself, and the question of bringing suit against him for such infringement, on several occasions and covering a period of several weeks before the agreement of June 3, 1932, was entered into, and it would seem to us that the agreement itself shows on its face that your father thoroughly understood the entire situation.

"Both your father and yourself realized at the time the necessity of determining by a judicial adjudication if Swezey was infringing upon the patent and especially upon Claim 2 under which only we were operating.

"We are very much astonished that you now make such a claim, and we are particularly embarrassed in your attempted repudiation and rescinding of our former agreement and understanding with your father. We feel sure that the dismissal of the suit against Swezey at this time would be prejudicial to Penley Bros. Company and would result in great injury to our business.

"We believe that you should cooperate and render every assistance in your power, except financial assistance, in helping us to protect and defend this patent.

"Believing that a dismissal of the suit would be prejudicial to our interests, we have instructed our counsel, Mr. Haskell, not to dismiss the suit, and to instruct Mr. Spear not to take any steps towards its dismissal on behalf of yourself or us. If you insist upon it, your counsel will probably advise you as to your right to withdraw from the action as a party plaintiff.

"We have no desire, of course, to see the patent invalidated and Claim 2 thrown open to competitors, but we understand from the conferences that we have had with you and your counsel, Mr. Chamberlain, that you fear now to have the validity of the patent tested out according to the original plan. Under these circumstances and in the absence of any other working arrangement with you, we cannot agree to the dismissal of the suit."

Mrs. Hall replied as follows, under date of January 24, 1933:

"I have your letter of January 12th. I have what I believe to be reliable information that Mr. Swezey is not in fact manufacturing or selling and does not intend to manufacture or sell. I see no reason why the suit should not be dismissed as I have already instructed Mr. Spear.

"I can see no advantage to either of us in further controversy by letter. I merely want to record at this time the fact that I do not admit many of the statements as set forth in your letter. I also want to repeat what Mr. Chamberlain said on my behalf at Mr. Spear's office, namely, that I expect to hold you to a strict accountability for everything that has occurred or may occur hereafter."

The following reply from Penley Bros. Company, of February 10, 1933, closed the correspondence:

"We received your letter of January 24 and noted with interest your report that Mr. Swezey had not and would not resume clothespin manufacture. Unfortunately, the reports we have received are quite definitely to the contrary. We have positive information that his plant is now in operation.

"As you say, however, there is no use in getting into further controversy by letter. You have very frankly stated your position and demanded that the suit be dismissed. We regret this because it compels us to take a definite stand and as we cannot get to any agreement, all we can do is accept the inevitable.

"We therefore are compelled to give you notice that your demand for dismissal is a breach of the covenants of the license and deprives us of even the appearance of any advantage under it. We therefore decline to pay any further royalties after this date. Check for royalties already earned will come along to you in the regular course of business. We now consider ourselves relieved of any further obligation under the license and you are free to do with your patent as you see fit.

"We regret personally to be forced to take this action, but the situation is a business situation and we cannot afford to pay royalties any longer when it is perfectly clear that the patent affords us no vestige of protection."

It does not appear that Mr. Spear, referred to in the correspondence, ever entered an appearance as counsel in the Vermont suit. There is no evidence of anything having been done in pursuance of the correspondence. The name of Mrs. Hall continues as one of the plaintiffs in the suit pending in Vermont. Penley Bros.,

having informed Mrs. Hall that they considered themselves relieved from any further obligations under their license, simply ceased the payment of royalties. This suit followed.

### Conclusions of Law.

The defendant claims that the correspondence shows a breach of that part of the license agreement which provides that the inventor shall "render to the licensee every assistance in his power, except financial assistance, in helping the licensee to protect and defend the patent."

It should be borne in mind, however, that nothing happened after the letters passed. The plaintiff stated, in substance, that she desired and intended to withdraw from the Vermont suit to which she became a party under a misapprehension as to the facts; that she saw no reason for its prosecution in view of her later knowledge; and that she had given instructions for its dismissal.

The attitude of mind of the plaintiff may have been displeasing to the defendant, but I cannot see how it has been prejudicial. If it was a threat to withdraw, it was never carried out. The situation and rights of the defendant were not changed. The delay of the defendant in the prosecution of the Vermont suit must have been purely voluntary on its part. The necessary parties were in court. There was nothing the plaintiff here could do to stop the prosecution of that suit for infringement or prevent its proceeding to a determination. Even if she had been permitted to withdraw her name as party plaintiff, she had no power to prevent the trial of the action to full adjudication on all the issues presented and still pending. "If the owner of a patent, being within the jurisdiction, refuses or is unable to join an exclusive licensee as coplaintiff, the licensee may make him a party defendant by process, and he will be lined up by the court in the party character which he should assume." Independent Wireless Tel. Co. v. Radio Corporation, 269 U. S. 459, 46 S. Ct. 166, 169, 70 L. Ed. 357. Equity Rule 37 (28 USCA § 723) also covers this situation.

As I understand the rule in the Second Circuit, the coplaintiff in the Vermont suit would not have been permitted by the court to withdraw her name. Deitel v. Chisholm et al. (C. C. A.) 42 F.(2d) 172.

The threatened action of the plaintiff, which was not carried out—could not be carried out—and which in no way caused loss or damage to the defendant, was no excuse for the nonperformance of the contract on the part of the defendant.

2. The counterclaim sets up the same alleged breach of agreement by the plaintiff mentioned in the answer and considered above, and makes it the basis of a claim for damages against the plaintiff in connection with the alleged invalidity of the patent, which is also set up as a defense.

The theory of the defendant seems to be that the patent is invalid; that, if it can be judicially determined to be so, the defendant is relieved from his covenant to pay royalties; that the Vermont suit furnished a means of having such a judicial determination; and that the "course of conduct" of the plaintiff has prevented it; on account of all of which defendant claims damages.

So far as this theory is based upon breach of the contract by the plaintiff, it has already been considered. I hold that the defendant is wrong in believing that it has been impeded by the plaintiff in the prosecution of the Vermont suit.

As to the claim of invalidity of the patent, which has been asserted both in the answer and in the counterclaim: At the hearing I refused to receive evidence of invalidity and exception was taken. I see no reason to change my position. The defendant was granted in the agreement the exclusive right to use the invention and patent during its life, and in return agreed to pay certain royalties. It also made a special agreement that it would not question the validity of the patent. This was contained in the following paragraph: "4. The licensee shall not, either directly or indirectly, use the said invention otherwise than in accordance with this license, nor shall it at any time during the continuance of this license dispute or object to the validity of the said letters patent, or the novelty or utility of said invention."

The language of that undertaking is clear and comprehensive. It prevents the defense of invalidity in this suit, which is for royalties under an existing and effectual contract. The defendant seems to assume that its notice of termination of the license agreement ended the agreement then and there. Many of counsel's citations would be pertinent only on that theory. Such a notice has no effect unless it has a basis, and I have already held the basis to

be lacking. The license agreement being still in force, with the express agreement of the licensee above referred to; there being no eviction and no failure of consideration; the licensee, in an action for royalties, cannot defend on the ground of the invalidity of the patent. Victory Bottle Capping Mach. Co. v. O. & J. Machine Co. (C. C. A.) 280 F. 753, First Circuit.

3. Defendant makes the point that the plaintiff does not allege or offer proof of performance on her part in a suit on a contract containing covenants on both sides; but this is not particularly important from a practical standpoint in view of the fact that the matter of performance has been the actual question litigated and decided in favor of the plaintiff.

4. A question was raised as to the jurisdiction of the court, both as to amount involved and as to the suit being more properly one at law; but I understood this to be waived at the hearing. There is no evidence as to the amount involved beyond the assertions in both the bill and the counterclaim, and jurisdiction in equity is founded on the necessity for an accounting.

5. The motion to dismiss is denied as well as the motion for judgment on the counterclaim. The motion to strike out the paragraphs in the answer relating to invalidity, as well as all of the counterclaim relating to invalidity, is granted.

A decree will be entered for an accounting and for the appointment of a special master; the bill being retained for further proceedings consequent upon his report.