## MASTER et al. v. SECOND PARISH OF PORTLAND et al.

### No. 3692.

Circuit Court of Appeals, First Circuit.

Dec. 24, 1941.

Clement F. Robinson, of Portland, Me. (Robinson & Richardson, Nathan W. Thompson, and Woodman, Skelton, Thompson & Chapman, all of Portland, Me., J. Claude Bedford, and George W. McKeag, both of Philadelphia, Pa., and Carl Zollman, of Milwaukee, Wis., on the brief), for appellants.

Frank P. Preti, of Portland, Me. (Frederic J. Laughlin, of Portland, Me., on the brief) for appellees.

Charles H. Blatchford, of Portland, Me., for Congregational-Christian Conference of Maine.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This controversy involves the question, who is entitled to use and occupy a certain church edifice and to select the minister to preach therein. It goes back to a so-called merger agreement in 1923 between a Congregational church and a Presbyterian church in Portland, Maine. The essential parties to the bill in equity, filed August 31, 1937, are various individuals as members and representatives of the large unincorporated organization known as the Presbyterian Church in the United States of America, as plaintiffs, and two Maine corporations as defendants, namely, the Second Parish in the Town of Portland and the First Presbyterian Society of Portland. The Congregational-Christian Conference of Maine was permitted to intervene as a defendant, but no further

reference to this intervenor will be necessary. Jurisdiction was properly based on diversity of citizenship, within the rule stated in Supreme Tribe of Ben-Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L. Ed. 673.

All the prayers of the bill for injunctive relief with respect to the church building and appurtenances and to the choice of a pastor were denied by decree of the district court dated April 10, 1941. The court, however, retained jurisdiction of the bill with a view to a possible accounting between the parties with reference to certain funds. The plaintiffs appeal from the foregoing decree.

We have been somewhat bewildered by the varying names by which many of the organizations concerned are described in the pleadings, in deeds of conveyance, in the testimony of witnesses, in the merger agreement itself; the district judge had ample provocation for his remark at one point: "Apparently none of these people knew what their names were."

The Presbyterian Church has been before the courts in many cases. Its organization and form of government are set forth in Watson v. Jones, 1871, 13 Wall. 679, 20 L.Ed. 666, and in Barkley v. Hayes, D.C.Mo.1913, 208 F. 319, affirmed sub nom. Duvall v. Synod, 8 Cir., 1915, 222 F. 669, affirmed sub nom. Shepard v. Barkley, 1918, 247 U.S. 1, 38 S.Ct. 422, 62 L.Ed. 939. The court below gave the following general description of its form of organization:

"The Presbyterian Church in the United States of America, hereinafter for convenience referred to as the plaintiff church, is a large, national, voluntary religious organization, comprising many churches of the Presbyterian denomination throughout the country, united in a common religious belief and form of worship, and having an organization which embraces the various churches and congregations, all of which are subject to the authority of other ecclesiastical bodies called judicatories, with the final authority vested in the General Assembly of the Presbyterian Church in the United States of America.

"The executive body of each church or congregation is called a Session, which seems to have the functions of an executive committee. It is composed of members of the congregation, elected by it, called ruling elders, together with the regularly installed pastor who is ex officio the moderator. To constitute a Session there must be at least one ruling elder and the pastor. The Session has charge of the spiritual welfare of the congregation and the right to control the use of the property of the church for the purposes of worship.

"Next above the Session in the organization is the Presbytery, consisting of all the ministers,—in number not less than five, —and one ruling elder from each congregation within a certain district. Subject to appeal, the Presbytery has jurisdiction over the churches in its district. The Session of any regular Presbyterian Church in Portland is subject to the authority of the Presbytery of Newburyport.

"The Synod, which exercises jurisdiction over the Presbyteries, is a convention of ministers and elders within a larger district.

"The General Assembly is the highest judicatory and represents in one body all the particular churches in the denomination. It consists of a delegation of ministers and elders from each Presbytery." [36 F.Supp. 918, 920].

With this as background, we proceed to a description of the two Portland congregations prior to their merger in 1923.

There was a Presbyterian church on Park Street, Portland, with a manse on Winslow Street. Legal title to these parcels of real estate was held by the First Presbyterian Society of Portland, a corporation. All persons who were communicants of the church and who contributed a minimum sum per year to its support were members of the said corporation. The corporation managed the property and business interests of the church subject to the "Form of Government" of the Presbyterian Church in the United States of America. The affairs of the corporation were entrusted to a Board of Trustees chosen by the members from their own number.

More important than the corporation was the religious or worshipping body at the Park Street Church, an unincorporated association known as the Park Street Presbyterian Church. Its executive body, called the Session, was elected by the members of the congregation, had charge of the spiritual affairs of the church and also authority over the uses to which the church buildings might be put, subject, however, to the control of the higher judicatories.

Under the Presbyterian system the First Presbyterian Society of Portland held legal title to the real estate but the whole beneficial interest therein belonged to the general church, not to the particular Park Street congregation. Subject to control of the higher judicatories the presbytery might dissolve or merge congregations within its jurisdiction. By paragraph IX of chapter XXVII of the "Form of Government" of the Presbyterian Church: "Whenever hereafter a particular church is formally dissolved by the presbytery, or has become extinct by reason of the dispersal of its members, the abandonment of its work, or other cause, such property as it may have, both real and personal, shall be held, used and applied for such uses, purposes and trusts as the presbytery may direct, limit and appoint, in conformity with the Constitution of the Presbyterian Church in the U.S.A."

The Congregational Church, the use and possession of which the plaintiffs are seeking to obtain by their present bill, is an imposing edifice on Congress Street, Portland, worth many times the value of the Park Street Church aforementioned. Prior to the merger of the two congregations, legal title to this church property was held by the Second Parish in the Town of Portland, which was incorporated in 1788 by act of the Massachusetts General Court as "a distinct and separate religious society * * * with all the privileges, powers and immunities which any parish in this Commonwealth is entitled to by law." Under the Congregational system this corporation was the dominant organization in the management of the affairs of the church, subject to no supervisory control by any hierarchy of church bodies as in the Presbyterian system. Its business was conducted by an elected body called the parish committee. Alongside this parish corporation was the worshipping body, also apparently incorporated, under the name of the Second Parish Congregational Church of Portland, Maine. It had a board of directors or "church trustees" with powers not clearly defined in the record.

In the year 1923 both the Presbyterian Church on Park Street and the Congregational Church on Congress Street were in financial difficulties. There was no minister at the Congregational Church, services had been suspended, and the church property was subject to debts. The Park Street Church was functioning with a pastor but its prospects of carrying on, from a financial standpoint, were not encouraging.

At a special meeting of the congregation of the Park Street Presbyterian Church on October 30, 1923, it was voted to make overtures to the Congregational Church "regarding a union of the two congregations." Committees representing the two churches met together and it appeared that the proposal met a favorable response from the Congregationalists. It was agreed that the united worshipping body would be Presbyterian, and that the Congress Street edifice would be used for worship. The Park Street Church was to be sold and after discharging the debts of the two churches from the proceeds, the balance was to be used for the benefit of the merged congregations. The Congregationalists insisted, however, that the Second Parish in the Town of Portland should retain its existing parish organization and name and also that in case of the future dissolution of the parish corporation and the abandonment of its property for church purposes, the proceeds of the sale of the same should be divided between the two denominations in proportion to their present valuation and contributions.

An agreement was drawn up and executed in the following terms:

"Memorandum of Agreement made and entered into in quadruplicate this twenty-seventh day of November A.D. 1923, by and between Second Parish of Portland, Maine, a corporation duly organized and existing under the Laws of the State of Maine, as party of the first part and Park Street Presbyterian Church, of Portland, Maine, also a corporation organized and existing under the laws of the State of Maine, as party of the second part.

"Whereas, the respective parties hereto have duly voted and agreed to unite in order to form one religious body to be known as the Second Parish Presbyterian Church to occupy and use the edifice and property of the Second Parish of Portland.

"Now this Agreement Witnesseth that in consideration of the premises and the mutual payment and receipt of one dollar ($1.00) and other good and valuable consideration it is agreed as follows:

"1. That the parties hereto hereby unite.

"2. That the second party hereby agrees that its church property at the corner of Park and Pleasant Streets in the City of

Portland, Maine, be sold and the proceeds of such sale applied.

"(a) To liquidate the indebtedness of both uniting corporations.

"(b) The balance after liquidation of said indebtedness to constitute a trust fund, the income of which shall be used to support the work of the Second Parish Presbyterian Church.

"3. The edifice and property, including all trust funds, of the first party shall be occupied and used for the purposes of said Second Parish Presbyterian Church.

"4. In the event of both the dissolution of said Second Parish of Portland (or its successor or successors) and the abandonment of its property or of any other acquired or substituted property for church purposes (both contingencies and not one), the proceeds shall revert to and be divided between the Congregationalist and Presbyterian denominations in proportion to their present valuation and contributions.

"5. That the property known as 'The Manse' at No. 72 Winslow St. in said City of Portland, shall, so soon as convenient after the completion of this union hereby effected, be conveyed by proper deed of conveyance to said first party; and all other steps, legal and otherwise, necessary or advisable to carry this agreement into full effect, shall be taken and are hereby authorized.

"6. The church members of the first party join the Presbyterian Church and the church members and contributors of the second party shall be elected members of the Second Parish of Portland, corporation.

"7. The present parish organization and name shall be retained.

"This agreement shall be binding upon the parties hereto, their assigns and successors.

"In Witness Whereof the foregoing instrument has been and is hereby executed by the parties hereto, and sealed with their common seals on behalf of said Second Parish of Portland by William W. Mitchell, Chairman, and Sven A. Adde, Clerk, and the members of the Parish Committee, and Edward E. Webster as Chairman and Fred W. Fogg, Clerk, and the other church Trustees thereunto duly authorized, and on behalf of Park Street Presbyterian Church by Alexander Archibald, Chairman of its Board of Trustees, and said Trustees and by Rev. Daniel Nicholson, Moderator, and Edward F.

Hayden, Clerk of its Session, and the other members of said Session, also thereunto duly authorized.

WILLIAM W. MITCHELL
    Chairman
S. A. ADDE
    Clerk
ALBERT D. ROBINSON    [SEAL]
EDWARD E. WEBSTER
EMIL EK
PERLEY E. WINSLOW
    Parish Committee

EDW. E. WEBSTER
    As Chairman
FRED W. FOGG
    Clerk    [SEAL]
S. A. ADDE
EMIL EK
    Church Trustees

A. F. ARCHIBALD
    Chairman
J. BRUCE McCRACKEN
W. A. MESSER
FREDERICK BARNES    [SEAL]
JOHN M. MACDONALD
FRED F. MACNEILL
GEORGE McCRUM
    Board of Trustees

(REV.) DANIEL NICHOLSON    [SEAL]
    Moderator
EDW. F. HAYDEN
    Clerk of Session
J. BRUCE McCRACKEN    [SEAL]
FREDERICK BARNES
A. F. ARCHIBALD
JOHN M. MACDONALD
ELIHU W. FULLERTON
    Members of Session

"In the presence of
    C. ARCHER DUNLAP
    JOHN A. McKAY"

The agreement was later approved by the Presbytery of Newburyport, the judicatory having immediate jurisdiction over the Park Street Church.

Pursuant to the agreement, the Park Street property was sold, the proceeds applied to the payment of debts of the two churches and the balance placed in the treasury of the Second Parish and held for the purposes of the united congregation. The corporation which had held title to the Park Street property, the First Presbyterian Society of Portland, ceased functioning after the sale of its real estate and became a mere shell, owning no property and attempting no activity. It was not, however, dissolved.

The Park Street Presbyterian Church, the worshipping body at the Park Street Church, ceased to function as such; its place was taken by a new unincorporated religious body described in the agreement as the Second Parish Presbyterian Church, which went into use and occupancy of the Congress Street edifice. Most of the members of the old worshipping body at the Congress Street Church were formally admitted to membership in the Second Parish Presbyterian Church, and perhaps half of the Presbyterians who came down from Park Street became corporate members in the Second Parish in the Town of Portland, as they were entitled to do under paragraph 6 of the agreement.

Thereafter the united worshipping body, the Second Parish Presbyterian Church, with its Session, functioned in all respects as a unit of the Presbyterian Church in the United States of America under the immediate authority and jurisdiction of the Presbytery of Newburyport.

As provided in paragraph 7 of the agreement, the Second Parish in the Town of Portland retained its organization and name and continued to perform its property-holding and money-handling functions. Whenever there was occasion to select a new pastor, the Presbyterian procedure was followed, that is, the selection would be made by vote of the worshipping body, the Second Parish Presbyterian Church, and submitted for approval to the Presbytery of Newburyport. However, by way of emphasizing its position that the corporate powers of the Second Parish had not been impaired by the agreement, in every case where a new pastor was to be selected the Second Parish by appropriate corporate action voted its concurrence in the choice made by the worshipping body.

Everything went smoothly, and there was cooperation between the Second Parish in the Town of Portland and the various Presbyterian judicatories until there occurred in 1936 a schism in the Presbyterian Church, an eventuality which none of the parties to the merger agreement had contemplated.

On June 30, 1936, at a special meeting of the Second Parish Presbyterian Church, called by its Session, it was resolved by a vote of 76 to 1 as follows:

"Be it resolved that we, the Second Parish Presbyterian Church of Portland, Maine, do deplore the unpresbyterian actions of the 148th General Assembly of the Presbyterian Church in the U. S. A. Therefore, be it further resolved that this church does not desire to join in this departure from the faith of our Presbyterian forefathers; therefore we stand on the doctrinal basis on which this church has stood from its beginning, and declare that the body which has taken these actions has no longer any jurisdiction, control or authority over us."

It was further voted, unanimously, that the church apply for admission to a newly formed national body called the Orthodox Presbyterian Church of America. Immediately thereafter a special meeting of the Second Parish in the Town of Portland was held, at which meeting that corporation voted 73 to 1 that the Parish concur with the church in the action which the church had taken relative to change of allegiance; and it was voted further to allow the use of the Congress Street property by the Second Parish Presbyterian Church as now affiliated with the Orthodox Presbyterian Church of America.

The foregoing votes of the church and parish were forwarded by the clerk of the Session to the Presbytery of Newburyport, and the Rev. Mr. Skilton, the pastor of the Second Parish Presbyterian Church, wrote to the Presbytery that he no longer regarded himself as under their jurisdiction. At a meeting of the Presbytery on August 3, 1936, charges were preferred against the pastor and it was "voted to dissolve the pastoral relations existing between the Rev. John H. Skilton and the Second Parish Presbyterian Church of Portland, Maine." An interim Session was set up to act in lieu of the regular Session of the Second Parish Presbyterian Church which, as noted, had undertaken to secede. The Rev. William MacDuffie was directed by the Presbytery to preach a gospel sermon in the Congress Street Church on August 16 and declare the pulpit vacant.

Rev. Mr. MacDuffie was not permitted to appear at the Congress Street Church for this purpose. He was notified by the Session of the Second Parish Presbyterian Church that "We are not now under the jurisdiction of the Presbyterian Church in the U.S.A. and will not permit a representative of Presbytery to appear in our pulpit for the purpose of declaring it vacant." After that the present litigation began.

Meanwhile, the Second Parish Presbyterian Church has continued to function with a minister of its own choosing, and resists the claim of the Presbyterian Church in the United States of America that it has the right to use the Congress Street Church property and to fill its pulpit.

It is to be observed that there is no dispute between the Second Parish in the Town of Portland (the Congregational Society) and the local Presbyterian bodies who were parties to the merger agreement of 1923. As the court below said: "The attitude of the Portland church appears to represent the unanimous feeling of the individuals connected with it."

The case turns on the interpretation of the merger agreement which, we are told, was "obviously drawn by laymen more interested in religion than law." That fact, paradoxically, is at once the cause of the difficulty in the case and the clue to the proper interpretation of the informally worded agreement.

According to the plaintiffs, the effect of the agreement was to convey in perpetuity the whole beneficial interest in the Congress Street property to the Presbyterian Church in the United States of America; the Second Parish in the Town of Portland, which had theretofore been an independent corporation in full control of the Congress Street property became under the Presbyterian system (like the First Presbyterian Society of Portland which had held legal title to the Park Street Church) "merely the agent, representative, title-holder and trustee under a special trust, for the Presbyterian religious body; i.e., the congregation interlocked with the presbytery and the denomination as a whole to form the P.C. in the U.S.A." Further, the plaintiffs say, "Once in the P.C. in the U.S.A. the property must stay there until the P.C. in the U.S.A. lets it go. That is the vital distinction between the Presbyterian and the Congregationalist system." From this it would follow that the Presbyterian Church in the United States of America, through its superior judicatories, could set up another congregation to worship at the Congress Street Church if the Second Parish Presbyterian Church refuses to return to the fold. Or, if not sufficient worshippers could be found to maintain the church on that basis, the plaintiffs could close down the Congress Street Church as a place of worship, order the property sold, and the

Second Parish in the Town of Portland would have no alternative but to convey legal title to the purchaser as directed. The proceeds of the sale might be applied by the Presbytery for church purposes, such as building another church somewhere else within the jurisdiction of the Presbytery. The members of the Second Parish would thus be out in the cold, and not even in a position to call for the financial adjustment provided for in paragraph 4 of the agreement.

It is abundantly clear from the record that this surprising result was not in the contemplation of the local persons who negotiated the merger agreement. Several witnesses, both from the former Park Street congregation and from the old Congress Street congregation, testified that never during the negotiations was there any suggestion that the Congress Street property was to be impressed with a trust in favor of the Presbyterian Church in the United States of America. Indeed, it does not appear that any of the Congregationalists concerned even knew of the Presbyterian system of property holding, which was so different from their own. The agreement is not to be read through the eyeglasses of experts versed in the subtleties of Presbyterian church law. Rather, it should be interpreted from the viewpoint of the local folks worshipping in neighboring churches in Portland who sought to get together to worship God in one place.

What stands out in the agreement is that the union is to be of the two worshipping bodies. The purpose recited is "to unite in order to form one religious body to be known as Second Parish Presbyterian Church." No doubt it was intended that this united religious body, through its Session, should become an integral part of the Presbyterian system. But neither in the negotiations nor on the face of the agreement is there any indication that the Second Parish in the Town of Portland, as the corporation owning and controlling the Congress Street building, was to surrender its independent status and become, like the First Presbyterian Society of Portland, merely a title-holding agent of the Presbyterian Church through its various judicatories. The Second Parish agreed that the united religious body should "occupy and use" the Congress Street edifice; this is far from saying that the beneficial interest in the property is conveyed to the

Presbyterian Church in the United States of America, with power in that national body through its various judicatories to do with the property as it wished. The object was to supply a common place of worship for the two neighboring congregations. That object was fulfilled; indeed, is still being fulfilled, for the local people who came over from the Park Street Church are still worshipping in peace and harmony with the brethren whom they joined at the Congress Street Church.

Paragraphs 4 and 7, which were inserted at the instance of the Second Parish negotiators, seem adequate to preserve the corporate independence of that Congregational society. Paragraph 4 refers to the possible future abandonment of "its" property for church purposes, that is, the property of the Second Parish, which fairly implies that the property continues to be beneficially owned by the Second Parish. The two contingencies mentioned in paragraph 4 seem to be intended to be subject to the control of the Second Parish; the idea being that if the Second Parish should later wish to withdraw from the arrangement, dispose of its property and dissolve, there should be an equitable division of the proceeds between the constituent denominations.

No doubt the situation at the Congress Street Church resulting from the merger agreement in 1923 was somewhat anomalous or, rather, unique. The united worshipping body, the Second Parish Presbyterian Church, through its Session, the Presbytery, and the higher judicatories, did not have the same complete control of the church edifice and the selection of a minister therein as had been the case at Park Street. This was because, as we read the agreement, the Presbyterian Church in the United States of America did not become the equitable owner of the Congress Street edifice. The united worshipping body merely acquired the right to use and occupy the church building by license of the Second Parish in the Town of Portland, which retained title to the property and retained also its full corporate independence as theretofore. Hence, whenever there came occasion to select a new pastor, the Second Parish by formal corporate action concurred in his selection and contracted with him for his salary. This would have been an idle gesture on the plaintiffs' theory of the case. The situation was not so bad from the point of view of the Presbyterians who came over from Park Street because under paragraph 6 of the agreement they were entitled to become members of the Second Parish and in that capacity to participate in its corporate action. Of course, the whole agreement was based on the presupposition that the two groups of local people would work together harmoniously, as indeed they have done and still do.

The bargain was a fair one. The Park Street people got out of their financial straits, and ever since 1923 have had the use, rent free, of the Congress Street Church, with an augmented Presbyterian congregation. The financial resources of the Second Parish have been used for the benefit of the united worshipping body. The Park Street people, so far as they have cared to do so, have become members of the Second Parish. On the other hand, the Congress Street people, who were also in financial difficulties, have had the mortgage on their church paid off; as part of the united worshipping body they have had the benefit of the combined resources of the two churches, and as a result the Congress Street Church has been reopened for public worship under successive pastors whom they all agreed upon.

The plaintiffs rely heavily upon the leading case of Watson v. Jones, 1871, 13 Wall. 679, 20 L.Ed. 666. As to this, the court below stated, correctly, we believe: "It is not a question as to which of two parties in a Presbyterian church shall have possession of Presbyterian property, as in a long line of cases like Watson v. Jones, 13 Wall. 679, 20 L.Ed. 666. The question is, to what extent did the agreement make it Presbyterian property and subject it to Presbyterian judiciary control." 36 F. Supp. 925.

■ The district court was of opinion that the Second Parish in the Town of Portland, as a religious society organized under the laws of Maine, could not, under the constitution and statutes of Maine, have surrendered up its powers and functions as claimed by the plaintiffs to have been done under the merger agreement as they interpret it. These points are fully discussed in the opinion below but in the view we take it is unnecessary to examine into them. We are satisfied that whatever the Second Parish lawfully could or could not have done, what it did do is insufficient to warrant the injunctive relief sought by the plaintiffs in this case. Nor do we find in

the conduct of the Second Parish after the 1923 agreement any ground for estopping the Second Parish to deny a "dedication" of the property to the Presbyterian Church in the United States of America, as claimed by the plaintiffs. The argument before us covered a wide range. We rest our decision solely on the ground that the Second Parish, on any fair interpretation of the agreement of 1923, did not convey the beneficial interest in the Congress Street property to the Presbyterian Church in the United States of America.

The decree of the District Court is affirmed, with costs to the appellees, and the case is remanded to that court for further proceedings not inconsistent with this opinion.