Henry TAYLOR, III

v.

**COMMISSIONER OF MENTAL HEALTH AND CORRECTIONS.\***

Supreme Judicial Court of Maine.

Argued Jan. 20, 1981.

Decided July 10, 1981.

---

\* We have changed the title of this case to reflect that the proceeding was initiated by one com-

mitted to the custody of the Commissioner of Mental Health and Corrections pursuant to 15 M.R.S.A. § 103. *See Buzzell v. Commissioner of Mental Health and Corrections*, Me., 423 A.2d 246 (1980); M.R.Civ.P. 10(a) and 25(d)(2).

NICHOLS, Justice.

On July 2, 1979, following a jury-waived trial, the Petitioner, Henry Taylor III, was adjudged not guilty by reason of insanity[1] of the charges of murder and reckless conduct. Pursuant to 15 M.R.S.A. § 103, the Superior Court (Cumberland County) ordered him committed to the custody of the Commissioner of Mental Health and Corrections for placement in an appropriate institution for the mentally ill.

On April 2, 1980, Taylor petitioned for a release treatment program pursuant to 15 M.R.S.A. § 104(3),[2] requesting permission to participate in Augusta Mental Health Institute supervised "off-grounds" activities and to make occasional unsupervised visits in the Augusta area with members of his family. Following a hearing held on May 1, 1980, the Superior Court (Kennebec County) denied the petition, ruling that Taylor had not sustained his burden of "proving beyond a reasonable doubt that he could be released without likelihood of causing injury to himself or others as a result of mental disease or mental defect." The presiding justice indicated that had the Petitioner's burden been by a preponderance of the evidence, instead of beyond a reasonable doubt, he would have ruled otherwise. The Petitioner filed timely notice of appeal.

The thrust of the Petitioner's argument is that the standards for conditional release treatment for persons institutionalized subsequent to acquittal on a finding of not guilty by reason of insanity are unconstitutionally more burdensome than the standards for release imposed on persons institutionalized on civil process pursuant to 34 M.R.S.A. § 2334 (1978).

James S. Erwin, Charles K. Leadbetter, Wayne S. Moss (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Kelly, Remmel & Zimmerman, Graydon G. Stevens (orally), Portland, for defendant.

Before WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ., and DUFRESNE, A. R. J.

1. The record indicates that the justice presiding at trial adjudged the Petitioner "not guilty by reason of insanity or mental disease or defect." Although Maine's Criminal Code requires a finding of "mental disease or defect" as a prerequisite to establishing lack of criminal responsibility, 17–A M.R.S.A. § 58(1), our Rules of Criminal Procedure contemplate a plea and a verdict of "not guilty by reason of insanity." M.R.Crim.P. 11(a). Consequently, to use the phrase "mental disease or defect" in such a context is improper.

2. 15 M.R.S.A. § 104(3) was repealed and replaced by P.L. 1979, ch. 663, § 86, effective March 28, 1980, and codified as 15 M.R.S.A. § 104–A(2) (Supp.1980–81). Both provisions, however, are virtually identical.

Where one is committed to the custody of the Commissioner of Mental Health and Corrections in accordance with 15 M.R.S.A. § 103 following a finding of not guilty by reason of insanity, the burden is upon the person seeking release to prove beyond a reasonable doubt that he "may be released or discharged without likelihood that he will cause injury to himself or to others due to mental disease or mental defect, . . . ." 15 M.R.S.A. § 104–A(1); *Chase v. Kearns,* Me., 278 A.2d 132, 138 (1971). On the other hand, where one is committed involuntarily, on civil process, in order to continue involuntary institutionalization the burden rests upon the party seeking continued commitment to prove by "clear and convincing evidence that the patient is mentally ill and that his recent actions and behavior demonstrate that his illness poses a likelihood of serious harm . . . ." 34 M.R.S.A. § 2334(5)(A)(1).[3] This distinction, asserts the Petitioner, amounts to a denial of due process and equal protection of the law in contravention of the Maine and United States Constitutions. We do not reach these constitutional issues. Instead, we dismiss Taylor's appeal as moot.

On May 27, 1980, subsequent to initiation of the instant appeal, a second petition, seeking approval of another release treatment program, was filed on behalf of the Petitioner by the Clinical Director of Au-

gusta Mental Health Institute. The treatment program therein proposed was of a more restrictive nature than that sought in the first petition; it proposed to allow Taylor's participation in supervised off-grounds activities but not to permit him to spend unsupervised periods in Augusta with his family. On September 24, 1980, hearing was held on this petition. The State raised no substantive objections to the treatment proposed, and the petition for a modified release treatment program was granted on October 16, 1980. The Petitioner does not appeal from the grant of this petition.[4]

Taylor's release according to the terms of the modified release treatment program means that he is receiving the treatment currently recommended by the staff. That is all he is entitled to under the law. He has no vested right to insist upon the terms of the program proposed by the staff earlier which would justify him in insisting that the staff persevere in that recommendation. The Petitioner's appeal from the earlier proceeding, therefore, is moot.

By dismissing this appeal on the ground of mootness, we observe overriding considerations of judicial economy. *Cote v. Zoning Board of Appeals,* Me., 398 A.2d 419, 420 (1979); *Hazzard v. Westview Golf Club,*

---

3. Section 2334(5)(A)(1) sets the standard of "clear and convincing evidence" for *initial* involuntary hospitalization. If *continued* involuntary commitment is necessary, § 2334(7) requires that application be made "in accordance with this section" to the District Court. Thus, the standard for *continued* institutionalization remains "clear and convincing evidence" pursuant to § 2334(5)(A)(1).

4. We observe that both petitions sought approval of modified *treatment* programs pursuant to 15 M.R.S.A. § 104–A(2) and not permanent release or discharge as provided for in § 104–A(1). "Release" is defined in § 104 as "*termination* of institutional inpatient residency and return to *permanent residency* in the community." (emphasis supplied).

It is § 104–A(1) which requires that the patient not be *released* until the court finds no likelihood that he will cause injury to himself or

others due to mental disease or defect. This burden must be satisfied beyond a reasonable doubt. As we emphasized in *Chase v. Kearns,* Me., 278 A.2d 132, 137 (1971):

[R]easonable medical doubts must be resolved in favor of the public not on particular language of the statute but on the paramount necessity of protecting the special interest which the public has acquired in the confinement and release of such a patient.

*See also State v. Shackford,* Me., 262 A.2d 359 (1970). Distinguishable from the above is the § 104–A(2) proceeding for approval of modified *treatment* programs. Section 104–A(2) requires the court to review the *appropriateness* of the proposed treatment plan. We intimate no opinion at this time as to whether the standard of proof required for § 104–A(1) discharge or release applies also to approval of § 104–A(2) modified treatment programs.

*Inc.,* Me., 217 A.2d 217, 224 (1966). Moreover, the constitutional issues raised by the Petitioner are preserved for another day. *See* Note, 88 Harv.L.Rev. 373, 375–76 (1974).

The entry is:

Appeal dismissed.

All concurring.