CONCERNED CITIZENS OF SOUTH-
ERN OHIO, INC., et al., Plaintiffs,

v.

The PINE CREEK CONSERVANCY
DISTRICT et al., Defendants.

No. C–1–75–5.

United States District Court,
S. D. Ohio, W. D.

Aug. 29, 1977.

Michael N. Tousey, Columbus, Ohio, for plaintiffs.

Duke W. Thomas, Columbus, Ohio, for defendants.

Herbert Creech, Dayton, Ohio, for amicus.

### MEMORANDUM

Before PECK, Circuit Judge, PORTER, Chief Judge, and HOGAN, District Judge.

HOGAN, District Judge.

This case was filed in 1975. The plaintiffs sought a declaratory judgment declaring the Ohio Conservancy Act unconstitutional and enjoining the defendant Conservancy District from proceeding thereunder. A three-judge district court was convened and, on July 6, 1976, it concluded that the claims of the plaintiffs were foreclosed by *Orr v. Allen,* 248 U.S. 35, 39 S.Ct. 23, 63 L.Ed. 109 (1918) aff'g 245 F. 486 (W.D.Ohio 1917). Plaintiffs appealed to the United States Supreme Court. On February 22, 1977, the Supreme Court reversed and remanded for a full and independent consideration by this Court of three constitutional challenges made by the plaintiffs.

The three challenges leveled by the plaintiffs are as follows:

First—That it does violate due process for the conservancy courts to make the decision as to whether the conservancy districts which they will administer be formed.

Second—That the composition of the conservancy courts violates the one-man one-vote principle of *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961) and *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

Third—That the Act permits the disenfranchisement of freeholders affected by the decision to create a conservancy district because the statute creates a presumption that a local political body, such as a township, represents the views of all persons within its jurisdiction whenever it supports a petition proposing the creation of a conservancy district.

The parties stipulated that no evidentiary hearing was required and each side has submitted briefs. Oral argument was waived.

Ten Conservancy Districts organized and operating under the Act were granted leave to file a brief amicus and have done so.

The plaintiffs include a number of individual residents of, owners of property in, and taxpayers of the defendant District.

The defendant Pine Creek Conservancy District was organized in 1966 under Chapter 6101 of the Ohio Revised Code. This case was precipitated by an assessment process which was initiated in 1972.

The Conservancy Act was passed by the Ohio Legislature in its original form in 1914. In 1913 a series of disastrous floods occurred in a number of rivers within the State of Ohio. The purpose of the Act was to enable the establishment of various conservancy districts within the State as political subdivisions and public corporations invested with the power of carrying out flood prevention and control via, for example, regulating stream channels, arresting erosion, reclamation, irrigation, flow regulation, etc. Upon organization, the Districts have powers of condemnation, assessment, taxation, bond issue, contracting, construction, etc.

Initially a District could be organized only within one county. That, of course, was impractical and in the early days districts involving multi-counties were authorized.

The organization process commences with the filing of a petition in the office of the clerk of courts of one of the counties in which property to be affected is included. The petition must be signed by 500 free-

holders or by a majority of the freeholders or by the owners of more than one-half of the property, in acreage or value, within the territory proposed to be organized.

The territory proposed to be organized must be generally described. The petition must outline the proposed improvement, allege the public need, and the necessity thereof and reasons therefor.

Upon the filing of the petition the Common Pleas Court in the county of filing determines whether the formal requirements have been met. Prior to that determination, the petitioners must file a bond "sufficient to pay all the expenses of the proceeding" in the event the Court should eventually decline to organize the District. Upon a determination of formal compliance, the Common Pleas Court of each county containing territory involved is notified. There is thereupon established by the statute a "Conservancy Court" composed of one Common Pleas Court Judge from each county involved. Each judge has a single and even vote on matters which come before the Conservancy Court.

A judge, when sitting on the Conservancy Court, receives compensation therefor of $30.00 per day out of the District funds, in addition to his usual salary, and, if travel is involved, his necessary expenses (R.C. 6101.-06 and 141.07).

The Court meets preliminarily for organizational purposes and fixes a time for hearing on the petition to establish. Notice by publication is required. Any property owner in the territory proposed may appear and object. (Some of the plaintiffs in this case were owners at the time of formation of Pine Creek. Some were not. No objections were made at that time by any plaintiff.)

At the hearing, if the Court determines that the formal requirements have been met and that the governmental purpose will be served thereby, the Court may declare the district organized. In this case (a) the governmental purpose of conservancy districts generally and Pine Creek in particular is conceded, (b) two of the plaintiffs' challenges go to the *formation* decision.

The purposes of the District are accomplished through two Boards appointed by the Court. One is a Board of Directors charged with formulating and executing and operating the project. The other is a board of appraisers which makes initial determinations of damage, benefits, lands to be condemned, valuations, "cost-benefit" determinations.

Under various sections of the Act the Court, in addition to the determination of whether to form or not and the appointment of the two Boards—

a) determines objections or exceptions to the appraisers' report respecting benefit, damage and appraisal;

b) determines whether the benefit of a project exceeds the cost;

c) reviews compensation awards for damages or taking of property (subject to the right of subsequent jury trial preserved to the owner);

d) reviews particular projects;

e) may set rates;

f) may levy taxes for certain recreational projects;

g) holds and conducts an annual meeting for examination of the annual report of the Board of Directors;

h) establishes the compensation to be paid to members of the Boards.

## I.

The plaintiffs' first challenge is based on the principles involved in—

*Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927);

*Ward v. Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972);

*Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

The validity of the challenge depends on whether or not the decision to form is adjudicative and, if so, whether the pecuniary interest is "substantial." *Berryhill* at 579, 93 S.Ct. 1689.

■ There is no dispute that the legislative or executive authority could have constitutionally formed conservancy and like

districts without affording objectors a forum in which to object. The Ohio Legislature could have constitutionally provided that a district could be formed by the simple collection and filing of petitions from individuals and bodies politic. There is no right to an adjudicative hearing at all in connection with the formation of such districts. *Houck v. Little River District,* 239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266 (1915). In *Tumey, Ward* and *Berryhill* the defendant had a right to the judicial or administrative hearing and therefore a right to an unbiased hearing officer. The questions involved in those cases were either clearly judicial or the administrative equivalent. The question of "formation vel non" in this case was not an adjudicative one but a legislative one. The hearing procedure relative to formation provided simply an additional check on the legislative process already petitioned for.

■ Furthermore, even were the cases relied on applicable to the proceeding involved, the pecuniary interest does not rise to the "substantiality" required. In the three cases relied on the hearing authority had before it an issue to decide and upon that decision the hearing authority, personally, or an entity in which the authority was interested was either actually or possibly benefited by a given determination—then and now. No *further* action or service on the part of the determining authority was called for. No question of compensation for future services was involved.

In this case the judges will be compensated for services rendered to and including the determination to form—whether the decision be to form or not form. As we have noted, the petitioners post a bond to accomplish just that. That factor was not involved in the cases relied on. Further, the pecuniary interest asserted as "conflicting" is *"compensation"* for future "services." Neither "compensation" nor "future services" was involved in the cases relied on. It is *not* claimed that the Ohio Statutory compensation is excessive. Conclusorily, and on balance, we hold simply that the pecuniary interest, under the circumstances of this case, is not substantial.

## II.

The Conservancy Court of a District containing more than one county is composed of one judge per county. If a county having more than one judge is involved, the Common Pleas Court of that county selects one. If there are only two counties involved and the judges cannot agree, the Chief Justice of the State assigns a third judge from some county not involved. A majority of the judges is necessary for any decision if the membership is uneven. If even, a tie is broken by the vote of the Presiding Judge. Except in the latter instance, the vote of each judge bears the same weight. (R.C. 6101.07)

The Pine Tree District lies partly in Lawrence County and partly in Scioto County. They adjoin. In neither instance is the entire county within the District. The population of Lawrence County is substantially less than the population of Scioto County and has been at all times relevant to this controversy. The Common Pleas Court judges in Ohio are elected by popular vote in counties at large (the electors of each county elect the judge or judges of that county). Based on *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1961), *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and similar subsequent cases, it is plaintiffs' claim that equal protection is denied to the voter of Scioto County in that he has less to say in choosing the membership of the Court than does the Lawrence County voter.

■ The majority of the functions of the Conservancy Court are judicial. The plaintiffs on brief point out that judicial powers exercised by the Court include determinations under R.C. 6101.07, 6101.33 and 6101.-28 at a minimum. The "one-man one-vote" decisions do not apply to the selection of judges who " 'do not represent people, they serve people.' " *Wells v. Edwards,* 347 F.Supp. 453 (M.D.La.1972), aff'd, 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679 (1973).

■ Nor does the Conservancy District— taking into consideration all of its powers,

judicial and otherwise—exercise general governmental power. The citizens and electors of Scioto County as such have no interest in, nor are they as such affected by the action of the District. In order to successfully invoke the principles on which plaintiffs rely, it must be shown that the vote of an elector, whose interests as such are governmentally involved, was assigned more or less weight than other electors; or stated otherwise, equality of interest must receive equality in voter weight. There is simply no relationship of equality between voters or citizens of either or both counties in the District, because obviously many of the voters and residents of each county have no interest to be affected by the District. The facts do not warrant applying the principle the plaintiffs urge.

An Ohio Conservancy District, such as Pine Creek, is not a general governmental agency—it exists for the limited purpose of conservancy (and more particularly flood control). It compares to the water district involved in *Salyer Land Co. v. Tulare Water District*, 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973). In that case the Court declined to extend the principle to such special or limited purpose agencies (at p. 730, 93 S.Ct. at p. 1231, 35 L.Ed. 659)—

"We hold therefore that the popular election requirements enunciated by *Reynolds, supra*, and succeeding cases are inapplicable to elections such as the general election of appellee Water Storage District."

Finally, if the Ohio Legislature had reserved the right to appoint the members of the Conservancy Court and, upon formation, appointed one resident of each county to it, there would clearly be no *Reynolds v. Sims* problem. There is no constitutional right to "vote" on the membership of the Courts of such Districts, as it does not seem to this Court that the Ohio scheme has extended the franchise to the selection process by designating for membership someone who had been elected to another position. The members of the Conservancy Court are *not elected to that office*. They are essentially appointed by the legislature.

We doubt it has ever been, even in passing, stated in Ohio that someone was "elected" to a conservancy district. Cf., *Sailors v. Board*, 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967) in which the Court, dealing with a local agency, pointed out "the delegates from the local school boards, not the school electors, select the members of the county school board. While the school electors elect the members of the local school boards and the local school boards, in turn, select delegates . . . ." and held the system "is basically appointive rather than elective." It is our conclusion that the Ohio system involves essentially legislative selection rather than voter election—the facts are essentially more comparable to the facts in *Sailors* than in *Avery v. Midland Co.*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1967).

### III.

Under O.R.C. 6101.05 the establishment of a district is initiated by a petition signed either by

500 freeholders

or

a majority of the freeholders

or

the powers of one-half the property in acreage or amount

The statute then provides that—

"[A] petition may be signed by the governing body of any public corporation lying wholly or partly within the proposed district . . . and when so signed by such governing body such a petition . . shall fill all the requirements of representation upon such petition of the freeholders of such public corporation, as they appear upon the tax duplicate; and thereafter it is not necessary for individuals within said public corporation to sign such a petition."

At the most, the statute extends a presumption if a public corporation signs. For R.C. 6101.08 clearly provides that "[a]ny owner of real property in a proposed dis-

trict who individually has not signed such a petition and who wishes to object to the organization and incorporation of said district shall . . . file his objections . . . " A hearing is required and under the same section such an objector, as an "interested party," may appeal through the Ohio courts.

The petition which initiated the formation of Pine Creek was executed by three townships and one village (as well as individuals resident in other areas).

The plaintiffs assert this to be a denial of equal protection to those who resided in the three townships and one village and who opposed the formation of the District.

Plaintiffs designate the discrimination on brief as follows: "this has worked an unequal effect upon the plaintiffs owning land in these political subdivisions; persons owning land elsewhere in the District were free to support or oppose the district as they wished, but they were not."

This Court is at a loss to understand plaintiffs' argument—and plaintiffs cite no relevant authority to support it.

In the first place, the only thing the petition accomplishes is to secure a *consideration* of the question of formation. The purpose of the petition is and was merely to demonstrate substantial support as a requisite for consideration. Equating the votes of the township trustees to the votes of the freeholders in the township *for that purpose* is not discriminatory—it is merely alternative.

In the second place—wherein lies the discrimination? The property of any freeholder in Ohio is within the territory of *some* public corporation (city, village, or township). All freeholders are treated the same. If a given public corporation signs or does not sign, it carries the same result. Any freeholder living anywhere within the district is counted *if* his public corporation signs. That is constant. The statute does not discriminate. The different facts do.

In the third place, the assertion of the plaintiffs as a necessary part of their claim that "persons owning land in these (signatory) political subdivisions . . . . were not . . . . free to support or oppose the district" is simply not so. The statute clearly creates no presumption relative to the hearing as distinguished from the preliminary examination and no conclusive presumption at all. Any freeholder who has not in fact signed (whether in or out of the area of a signatory public corporation) may appear, except, object and appeal.

The Court concludes that O.R.C. Chapter 6101 is constitutional. A proposed judgment consistent herewith may be presented.