739 F.2d 1472
 TAXPAYERS FOR THE ANIMAS-LA PLATA REFERENDUM, Jean
McCulloch, Thomas McCulloch and Helen Robinson,
Plaintiffs-Appellants,
v.
ANIMAS-LA PLATA WATER CONSERVANCY DISTRICT; and Bob K.
Taylor, Arthur Isgar, Victor A. Paulek, Lawrence Huntington,
Brice F. Lee, Frank Campana, Edward T. Searle, Frederick
Kroeger, Allen J. Murdock, John E. Schmitt, Gilbert Slade,
F. Sheldon Slade, Richard M. Dossey, and their Successors,
in their official capacities as Directors of the Animas-La
Plata Water Conservancy District, Defendants-Appellees,
State of Colorado, Defendant-in Intervention, Appellee.
 No. 83-2218.
 United States Court of Appeals,
Tenth Circuit.
 July 11, 1984.
 
 Jeffrey G. Pearson, Denver, Colo., for plaintiffs-appellants.
 Wendy C. Weiss, Asst. Atty. Gen., Denver, Colo. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen. and Richard H. Forman, Sol. Gen., Denver, Colo., with her on the briefs), for defendant-in-intervention, appellee.
 Thomas H. Shipps, Durango, Colo. (McDaniel & McDaniel, Durango, Colo., with him on brief) of Maynes, Bradford & Shipps, Durango, Colo., for defendants-appellees.
 Richard B. Collins and Don B. Miller, Native American Rights Fund, Boulder, Colo., filed an amicus curiae brief for the Ute Mountain Ute and South Ute Indian Tribes.
 John M. Sayre, Gregory J. Hobbs, Jr., and Zach C. Miller, Davis, Graham & Stubbs, Denver, Colo., filed an amicus curiae brief for the Northern Colorado Water Conservancy Dist. and Municipal Subdistrict, Northern Colorado Water Conservancy Dist., Loveland, Colorado.
 Before BARRETT, BREITENSTEIN and McKAY, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Taxpayers For the Animas La-Plata Referendum, a non-profit citizen's organization, appeals from the district court's dismissal of its cause of action pursuant to a motion by defendant Animas-La Plata Water Conservancy District. This important and unusual appeal involves several constitutional issues which require that the background and facts be set out in some detail to facilitate our review.
 
 
 2
 In 1937, the Colorado Legislature enacted its Water Conservancy Act, C.R.S. Secs. 37-45-101 et seq., which according to the Colorado Supreme Court, was designed to assist communities in financing water projects for irrigation, conservation, and other public purposes. See People ex rel. Rogers v. Letford, 102 Colo. 284, 79 P.2d 274, 281 (1938). The major tools created by the Act to serve this end were water conservancy districts armed with the power to levy general ad valorem taxes.
 
 
 3
 In order to establish a water conservancy district, the Act requires 1) a petition signed by twenty-five percent of the owners of irrigated lands and five percent of the owners of nonirrigated lands to be included within the proposed district and 2) the district court's review of the accuracy of the petition. C.R.S. Secs. 37-45-109 and 112. Those opposed to the creation of a particular district have a right to a general election on the issue if they successfully gather a petition of opposition bearing the names of twenty-five percent of the owners of irrigated lands and five percent of the owners of nonirrigated lands to be included within the proposed district. C.R.S. Sec. 3-45-112(2)(b).
 
 
 4
 On June 21, 1979, the proponents of the Animas-La Plata Conservancy District filed an initiating petition with the state district court of La Plata County. This petition was ultimately reviewed and deemed satisfactory by the state district court. Concerned primarily with potentially adverse environmental impacts of the project, various citizens within the proposed district organized an association to seek a general election on the district formation issue. This association, Taxpayers for the Animas-La Plata Referendum ("TAR"), raised and spent some $10,000 in its petition drive, but the state district court ultimately found that TAR's petition was insufficient to force an election pursuant to C.R.S. Sec. 37-45-112(5)(b). Hence, the district court decreed the Animas-La Plata Water Conservancy District officially organized in compliance with the Act.
 
 
 5
 TAR, displeased with the procedures utilized in forming the district, filed a complaint in federal district court alleging various violations of 42 U.S.C. Sec. 1983 by the water district and its directors. Specifically, TAR alleged that the provisions of the Colorado Water Conservancy Act violated the equal protection and due process clauses of the Fourteenth Amendment, and also deprived its members of their First Amendment rights. TAR originally sought declaratory and injunctive relief, and a refund of any taxes paid to the district by TAR members.
 
 
 6
 At this point, TAR's lawsuit ballooned into a matter of great consequence to the entire State of Colorado. The issues presented by the case cast some degree of doubt upon the validity of every conservancy district formed pursuant to the Act's procedures. This doubt apparently hindered the existing districts' efforts to finance and refinance their projects, and thus created widespread fears that Colorado would lose substantial control over its water resources.
 
 
 7
 Such uncertainty was unacceptable to the Colorado Legislature. It quickly considered and passed House Bill 1272 (now codified at C.R.S. Sec. 37-45-153), which "validated" and "recreated" every conservancy district originally organized pursuant to the Act's procedures. The bill did not affect or change, however, the Water Conservancy Act's existing procedures for establishing conservancy districts. Although TAR argues that the motive behind House Bill 1272 was to destroy their pending lawsuit, the purpose expressed in the statute was "to provide financial security and stability" for water development and "to ensure that obligations and projects undertaken ... are honored and carried out." C.R.S. 37-45-153(5). (Significantly, the legislature rejected an amendment to the bill which would have excluded the Animas-La Plata district from its coverage.)
 
 
 8
 In response to House Bill 1272, TAR amended its original Sec. 1983 complaint to include claims challenging the constitutionality of the bill, and also claims for special and general damages relating to the district's formation. The district court accepted TAR's amended complaint, but after hearing oral arguments, granted the defendant's Motion to Dismiss. In reaching this conclusion, the court first upheld the constitutionality of House Bill 1272 and dismissed TAR's four claims challenging the validity of the bill. Having so found, the court next dismissed as moot eight of TAR's other nine claims seeking declaratory and injunctive relief in regard to the formation of the Animas La-Plata District. The court declined to dismiss the ninth claim (which represented TAR's amended claim for damages stemming from the district's formation) on the basis of mootness; rather, the court found that the alleged damages were not "causally connected with anything that these defendants did." (R. Vol. V, Exhibit D, at 6.) On appeal, TAR challenges each of the court's conclusions. We will discuss each of TAR's contentions, beginning with an analysis of the constitutionality of House Bill 1272.
 
 House Bill 1272
 
 9
 TAR advances two separate arguments supporting the unconstitutionality of House Bill 1272. First, it maintains that the bill violates the supremacy clause of Article VI of the United States Constitution by "ousting" the federal court of jurisdiction to entertain this lawsuit. Second, it argues that the bill constitutes retrospective legislation and thus violates Article II, Section 11 of the Colorado Constitution (which prohibits laws "retrospective in operation"), and the due process clause of the Fourteenth Amendment.
 
 
 10
 Supremacy Argument: TAR seeks to fit the present case into a line of prior authority holding that states may not assert their sovereignty in a manner which defeats the jurisdiction of federal courts to hear controversies arising from the laws of the United States. Among others, TAR cites the cases of General Atomic Co. v. Felter, 434 U.S. 12, 98 S.Ct. 76, 54 L.Ed.2d 199 (1977), Harrison v. St. Louis & San Francisco R.R., 232 U.S. 318, 34 S.Ct. 333, 58 L.Ed. 621 (1914), Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932), Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964), and United States v. Peters, 9 U.S. 115, 5 Cranch 115, 3 L.Ed. 53 (1809). We have reviewed these cases and agree that they support the aforementioned principle, yet we disagree with TAR's contention that such authority is relevant to the present case.
 
 
 11
 In the cases cited by TAR, various states directly intervened in ongoing federal controversies by attempting, in one form or another, to prevent the assertion of federal jurisdiction. For example, in General Atomic and Donovan, supra, state courts attempted to enjoin litigants from invoking federal in personam jurisdiction; in Peters, the Pennsylvania Legislature attempted to prohibit the execution of a federal court's decree by denying the court's jurisdiction; in Harrison, the state legislature attempted to defeat the federal court's removal jurisdiction through sophistic definitions of "domicile"; and in Constantin, the Governor of Texas sought to take away the federal court's jurisdiction in a pending matter by declaring that martial law existed. In each of these cases, the Supreme Court prohibited the attempts of the states to interfere with the federal court's clearly-established power to hear and decide federal matters.
 
 
 12
 To equate the actions of the Colorado Legislature in enacting House Bill 1272 with the state action in the above cases requires a most superficial analysis of the law and the facts. It is true that House Bill 1272 undercut the validity of TAR's challenge to the formation of the Animas-La Plata District. It is not true, however, that this result stemmed from state interference with the federal court's power to hear the matter. Rather, the federal court, in applying Article III, Section 2 of the United States Constitution, itself determined that TAR's lawsuit did not present a justicable case or controversy. It is well established that new legislation, by curing the constitutional defects of a prior statute, may moot a pending lawsuit. See, e.g., Kremens v. Bartley, 431 U.S. 119, 128, 97 S.Ct. 1709, 1714, 52 L.Ed.2d 184 (1977); Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). Clearly, the Colorado Legislature possessed the power to enact House Bill 1272. See Sailors v. Board of Education, 387 U.S. 105, 109, 87 S.Ct. 1549, 1552, 18 L.Ed.2d 650 (1967); People ex rel. Rogers v. Letford, 102 Colo. 284, 79 P.2d 274 (1938). Even had the legislature intended to moot TAR's lawsuit, we find no supremacy clause violation in the enactment of the bill. Stated simply, House Bill 1272 does not destroy federal jurisdiction; rather, it effects Colorado law and thereby TAR's rights in pursuing its lawsuit.
 
 
 13
 Retroactive Legislation: In its amended complaint, TAR alleged that House Bill 1272 constituted unlawful retroactive legislation. Specifically, they claimed that the bill violates both Colorado's constitutional prohibition of laws "retrospective in operation," Colo. Const. Art. II, Sec. 11, and also the due process clause of the Fourteenth Amendment to the United States Constitution.
 
 
 14
 The district court dismissed these arguments, noting primarily that there had been no judgment in the case and thus no impairment of "vested rights" held by TAR. TAR contends on appeal, however, that the district court ignored the import of the leading Colorado cases in considering the state constitutional claim, and misapprehended the meaning of controlling Supreme Court authority in regard to the federal constitutional claim.
 
 
 15
 As to the state claim, TAR relies primarily upon Brown v. Challis, 23 Colo. 145, 46 P. 679 (1896), and Day v. Madden, 9 Colo.App. 464, 48 P. 1053 (1897). Indeed both Brown and Day dealt with the effect of Art. II, Sec. 11 of the Colorado Constitution upon pending litigation. Brown involved the legislature's attempt to prohibit previously authorized sales of mining property in the event of unsuccessful partition efforts. Day involved the legislature's striking from the statutes one ground for enforcing an action for a writ of attachment. Both courts found these legislative efforts unconstitutional because of their effect upon the rights of plaintiffs suing under the superceded statutory authority.
 
 
 16
 Although the courts approached the issue from different vantage points, both recognized that the effect of the two pieces of legislation was to deny completely the plaintiff's remedies. To the Brown court, the denial of this remedy was per se a confiscation of the plaintiff's rights. The Day court, however, recognized that the analysis must not end with a finding of an impaired remedy: "The question still remains whether the destruction of the remedy has not injuriously affected substantial rights formerly possessed by the plaintiff." 48 P. at 1057 (emphasis added). Thus, the Day court went on to conclude "that the right to a writ of attachment, when it accrued and was exercised while the statute was in force permitting it, gave to the attachment plaintiff a right which may be called either "vested" or "substantial", at pleasure, but nevertheless a right which could be neither taken away nor destroyed by the repeal of the statute under which it had been regularly acquired." Id. Colorado decisions subsequent to Day have continued to require the assertion of some sort of heightened right, whether it be deemed 'vested' or 'substantial', in claims alleging the retroactive effect of legislation. For example, in Vail v. Denver Bldg. & Const. Trades Council, 108 Colo. 206, 115 P.2d 389, 393 (1941), the Colorado Supreme Court held that Art. II, Sec. 11 of the Colorado Constitution "applies solely to statutes which take away or impair a vested right acquired under existing laws." See also Continental Title Co. v. District Court, 645 P.2d 1310, 1315 (Colo.1982).
 
 
 17
 Clearly the terms "vested" or "substantial" right are conclusory in nature; the exact meanings of such terms are not susceptible to definition. The Colorado Courts have indicated, however, certain rights which they do not deem "vested." Apparently among these inferior rights are "inchoate" rights, the rights to pursue legal remedies, and any rights which may attach during the actual maintenance of a lawsuit to enforce a legal claim. See id. at 1314; Vail v. Denver Bldg. & Const. Trades Council, supra.
 
 
 18
 The district court cited the Vail decision and noted that there had been no judgment in TAR's behalf. The court then concluded that "[t]here are no vested rights in this case." (R.Vol. V, at 4.) In the absence of controlling local authority, the district court's interpretation of the law of the state of its jurisdiction is entitled to deference. Bezzi v. Hocker, 370 F.2d 533, 536 (10th Cir.1966). Our review of Colorado law on this complex subject has revealed no authority upon which to hold that the district court reached an erroneous conclusion. Indeed, our reading of the cases supports the court's disposition of the state constitutional claim.
 
 
 19
 As to the federal constitutional claim, TAR maintains that House Bill 1272 violates the due process clause of the Fourteenth Amendment and thus constitutes unlawful retroactive legislation. Our review of the vast body of Supreme Court authority convinces us that this claim must fail primarily on the same basis as the state constitutional claim. Namely, TAR's rights are insufficiently substantial (e.g. not "vested") to warrant constitutional protection against House Bill 1272.
 
 
 20
 As was true with the state authority discussed above, the Supreme Court decisions reveal the necessity of asserting an impact upon "vested rights" in claims founded upon the retroactivity of legislation in violation of the United States Constitution. See, e.g., FHA v. The Darlington, Inc., 358 U.S. 84, 91, 79 S.Ct. 141, 146, 3 L.Ed.2d 132 (1958); Swayne & Holt, Ltd. v. United States, 300 U.S. 297, 302, 57 S.Ct. 478, 480, 81 L.Ed. 659 (1937); Graham & Foster v. Goodcell, 282 U.S. 409, 430, 51 S.Ct. 186, 75 L.Ed. 415 (1931); Hodges v. Snyder, 261 U.S. 600, 603, 43 S.Ct. 435, 436, 67 L.Ed. 819 (1923). As under Colorado law, the scope of the conclusory term "vested right" has remained undefined by the Supreme Court.
 
 
 21
 It is clear, however, that the Court has not hesitated to uphold legislation which has mooted pending lawsuits and destroyed accrued causes of action. See Louisville & Nashville R.R. v. Mottley, 219 U.S. 467, 485, 31 S.Ct. 265, 271, 55 L.Ed. 297 (1911); McCullough v. Virginia, 172 U.S. 102, 123, 19 S.Ct. 134, 142, 43 L.Ed. 382 (1898); Foster v. Goodcell, supra. Although the Court has indicated that it would not allow a legislature to interfere with an adjudicated right, Hodges v. Snyder, supra, or with a contractual right to recover money, Coombes v. Getz, 285 U.S. 434, 448, 52 S.Ct. 435, 438, 76 L.Ed. 866 (1932), we see no analogy supporting the application of such cases to TAR's rights in the present case. As we have previously indicated, TAR's rights in challenging the district were inchoate; its expenses and changes in position associated with litigation are simply not sufficient, in our view, to affect the constitutionality of otherwise valid legislation.[1] See Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv.L.Rev. 692, 718 (1960).
 
 
 22
 It is true that House Bill 1272 effectively abrogates TAR's rights to challenge the validity of the Animas-La Plata District. Nonetheless, this consideration cannot be deemed to outweigh the insubstantial legal incidents supporting TAR's rights and the discernible public purpose behind the bill. See id. at 697. The Colorado Legislature clearly felt it was attempting to remedy a dangerous, if not an emergency, situation in enacting House Bill 1272. Although TAR plainly disagrees with the legislature's perceptions regarding the proper direction of water development in Colorado, we cannot ignore that House Bill 1272 was designed to promote what the legislature deemed a "public purpose" in response to a troublesome situation. Such circumstances lend further support to the constitutionality of the bill. See Veix v. Sixth Ward Bldg. & Loan Ass'n., 310 U.S. 32, 40, 60 S.Ct. 792, 795, 84 L.Ed. 1061 (1940); Graham & Foster v. Goodcell, supra 282 U.S. at 429, 51 S.Ct. at 193.
 
 Mootness
 
 23
 Having affirmed the constitutionality of House Bill 1272, we must next examine the bill's effect upon TAR's lawsuit. First, as the district court held, the validity of the bill obviously destroys TAR's four claims challenging its constitutionality. Beyond this, however, we must determine whether House Bill 1272 mooted TAR's Sec. 1983 claims relating to the formation of the Animas-La Plata District.
 
 
 24
 The district court concluded that TAR's claims for declaratory and injunctive relief were indeed mooted by the bill. This determination seems unassailable. As the court noted, the law must be examined as it now stands, not as it once stood. Diffenderfer v. Central Baptist Church, 404 U.S. 412, 414, 92 S.Ct. 574, 575, 30 L.Ed.2d 567 (1972); State of New Mexico v. Goldschmidt, 629 F.2d 665, 667 (10th Cir.1980). The Animas-La Plata District now exists by means of the Colorado Legislature's statutory enactment. Thus, any alleged impropriety regarding the district formation procedures has been removed by the superceding actions of the legislature. "It is well settled that the enactment of legislation can moot an appeal even though there may have been a viable issue in the district court." State of New Mexico v. Goldschmidt, supra at 667.
 
 
 25
 TAR, however, labels its suit a "ballot access challenge" and argues that the cause must therefore be saved from mootness owing to a line of Supreme Court cases according special review to such controversies. This argument is without merit and, indeed, misstates the controlling principles. The cases cited by TAR do not establish a special category of review for ballot access challenges, but merely apply the general notion that cases will not be rendered moot if they are "capable of repetition, yet evading review." Anderson v. Celebreeze, 460 U.S. 780, ---- n. 3, 103 S.Ct. 1564, 1567 n. 3, 75 L.Ed.2d 547 (1983), (citing Storer v. Brown, 415 U.S. 724, 737 n. 8, 94 S.Ct. 1274, 1282 n. 8, 39 L.Ed.2d 714 (1974)); Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969).
 
 
 26
 This principle has necessarily been applied narrowly. Article III of the United States Constitution admonishes courts from issuing advisory opinions on abstract questions. See Hall v. Beals, 396 U.S. supra at 48, 90 S.Ct. at 201. Pursuant to that provision, courts should decide only "live" controversies. Id. The Supreme Court has held, however, that certain cases which appear technically mooted, are in reality live controversies because they will recur and again evade review. See Sosna v. Iowa, 419 U.S. 393, 400, 95 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975); Storer v. Brown, supra; Roe v. Wade, 410 U.S. 113, 125 (1973); Moore v. Ogilvie, supra;In our view, the present case does not fall within the category of controversies "capable of repetition, yet evading review." It is true that the district formation procedures challenged by TAR remain part of the Colorado statutes. It is possible that the procedures will again be utilized, that a lawsuit will again be initiated by TAR challenging the procedures, and that the Colorado Legislature will again undercut TAR's lawsuit by statutorily authorizing the challenged district. The mere theoretical possibility that these events may recur, however, does not save the present case from mootness. As the Supreme Court has noted, there must be a "reasonable expectation" or a "demonstrated probability" that the same controversy will recur involving the same complaining party. Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982); Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975). We detect no such level of probability in this case. In particular, it would involve a great amount of speculation to predict the future behavior of the Colorado, or for that matter, any legislature. We thus hold that TAR's claims for injunctive and declaratory relief were effectively mooted by House Bill 1272.[2]
 
 Damages
 
 27
 The district court acted properly in determining that TAR's claims for damages were not moot. Indeed, by definition claims for past damages cannot be deemed moot. As was pointed out, however, the court nonetheless dismissed the damage claims because of a lack of causation between the alleged harm and the named defendants.
 
 
 28
 Specifically, TAR prayed for $10,000 in special damages to recompense its members for expenses incurred in its petition drive opposing the district's formation. TAR labels these damages "equitable restitution."[3] In addition, TAR, and three individual plaintiffs, each claimed $1,000 in "general damages" for "infringement and injury" to their constitutional rights.
 
 
 29
 TAR, in its Reply Brief, asks the key question in regard to these claims for damages: "How could [the] defendants, having no official existence until after entry of the official District formation decree, have 'caused' plaintiffs any harm during the election triggering District petitioning process?" Plaintiffs-Appellants' Reply Brief at 6. Despite TAR's assertions to the contrary, we agree with the district court's conclusion that there is simply no causative nexus to be found in this case.
 
 
 30
 Initially, TAR confuses the issue of causation by citing various Supreme Court cases relating to standing. E.g., Duke Power v. Carolina Environmental Study Group, 438 U.S. 59, 74, 98 S.Ct. 2620, 2631, 57 L.Ed.2d 595 (1978); Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 41, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976). The district court made no finding that TAR lacked standing to pursue the present action. This is not a standing case. Although the Supreme Court has recently adopted a "causation corollary" to the longstanding "injury in fact" requirement,[4] we do not see the relevance of this concept outside of the standing area. Surely, a plaintiff's successful presentation of the requirements for standing would not establish, on the merits of the case, that the defendant caused the claimed harm. TAR seems to present just such an argument.
 
 
 31
 Closer on point, but still unpersuasive, is TAR's reliance upon Comanche County v. Lewis, 133 U.S. 198, 10 S.Ct. 286, 33 L.Ed. 604 (1890). In Comanche County, county bond holders sued the county for unpaid interest. The county defended by asserting that when the bonds were issued the county was fraudulently organized. The Supreme Court, however, rejected the county's argument. The Court noted that even though the "political organization" of the county had changed since the issuance of the bonds, the county, "as a territorial subdivision of the State, has been in existence and unchallenged for more than a score of years." Id. at 204, 10 S.Ct. at 289 (emphasis added). The Court continued:
 
 
 32
 "[I]t is, after all, the county, with its property and population, which is the debtor. No one would for a moment suppose that when a county has contracted a valid obligation, the fact ... that all its inhabitants had removed and their places supplied by others, would affect that obligation."
 
 
 33
 Id. at 205, 10 S.Ct. at 289.
 
 
 34
 Although the Court, to a certain extent, relied upon principles of equity in holding the county responsible in Comanche County, the case does not counsel federal courts to ignore principles of causation in determining the rights of deserving plaintiffs. Rather, Comanche County held that mere changes in form will not shield an entity from legitimate legal claims arising prior to the changes.
 
 
 35
 The scenario in Comanche County bears little resemblance to the present action. Here, the Animas-La Plata District was merely a "twinkle in the eye" of its proponents at the time TAR incurred its alleged damages. In fact, the District did nothing itself to interfere with the rights of TAR members. The District was formed by the state district court pursuant to procedures established by the state legislature. Although the District was indeed the creature of allegedly unconstitutional procedures, it can hardly be held responsible for those procedures. To hold otherwise would suggest that personal liability may attach to whomever benefits from unconstitutional laws.[5]
 
 
 36
 We are sympathetic to TAR's present position; it may well be foreclosed from recovering its "damages" from any party owing to the peculiarities of this case. Nonetheless, we have our doubts that TAR's petition costs may even properly be deemed "damages." The expenses are akin to legal fees or costs. Such expenses are generally not considered "damages" because they are not the legitimate consequence of the tort or breach of contract sued upon. 22 Am.Jur.2d Damages Sec. 165 n. 19. In the absence of statutory authority or contractual agreement, these expenses may not be recovered. Id.; 20 Am.Jur.2d. Costs Sec. 10. In our view, TAR's petition costs were not a legitimate consequence of the alleged First and Fourteenth Amendment violations inherent in the district formation procedures. Indeed, TAR's constitutional challenges relate, not to the requirement of a petition of opposition with its associated costs, but to the various rules defining those eligible to sign the petitions. Thus, TAR was allegedly "injured" because various persons were not allowed to sign the petition, not because TAR incurred expenses in organizing the petition drive.
 
 
 37
 Finally, it should be pointed out that the claims for general damages in the amount of $1,000.00 on behalf of TAR and the individual plaintiffs are not supported by allegations that these parties were actually injured in such amounts. The basic purpose of an award of damages under Sec. 1983 is to compensate persons for injuries caused by the deprivation of constitutional rights. Carey v. Piphus, 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). The deprivation of constitutional rights, standing alone, does not entitle a plaintiff to general damages. See Smith v. Losee, 485 F.2d 334, 344 (10th Cir.1973), cert. denied, 417 U.S. 908, 94 S.Ct. 2604, 41 L.Ed.2d 212 (1974). A plaintiff must show actual injury in order to recover more than nominal damages. Carey v. Piphus, supra; Lancaster v. Rodriguez, 701 F.2d 864, 865 (10th Cir.1983), cert. denied, --- U.S. ----, 103 S.Ct. 3121, 77 L.Ed.2d 1373 (1983). Neither TAR nor the individual plaintiffs have made such a showing.
 
 
 38
 AFFIRMED.
 
 
 
 [1]
 TAR attempts to magnify the scope of its rights affected by House Bill 1272 by arguing that the bill denied "its right to recover damages to their First and Fourteenth Amendment rights." Appellants Brief at 31. It should be recalled, however, that the district court dismissed TAR's damages claims, not on the basis of mootness, but because of a lack of causation between the alleged damages and the named defendants. Hence, the only rights affected by House Bill 1272 were associated with TAR's claims for declaratory and injunctive relief--claims which did not rise to the level of "vested rights."
 
 
 [2]
 We reject TAR's argument that its claim for money damages "obligated" the district court "to adjudicate the plaintiffs' claim for declaratory relief." Appellants' Brief at 34. There is no authority for this proposition. While TAR may have a continuing claim for damages, such a claim cannot resurrect the moot claims for equitable relief. Each claim must stand or fall on its own. See, e.g., University of Texas v. Camenisch, 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981); Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)
 
 
 [3]
 We disagree with TAR's characterization. Neither the District nor its directors derived any benefit in this amount from TAR's expenditures. Hence, "restitution" in such an amount would be improper. See 22 Am.Jur.2d, Damages Sec. 17; Restatement of Restitution Secs. 150-154
 
 
 [4]
 See generally Tribe, American Constitutional Law Sec. 3-21 (1978)
 
 
 [5]
 TAR suggests that Concerned Citizens of Southern Ohio, Inc. v. Pine Creek Conservancy District, 473 F.Supp. 334 (S.D.Ohio, 1977), implicitly sanctioned the award of damages against a conservancy district formed pursuant to allegedly unconstitutional procedures. This argument, however, is a serious misrepresentation of the facts of that case; the plaintiffs in Pine Creek sought only declaratory and injunctive relief--they made no claim for damages. Further, the court held that the district formation procedures at issue were constitutional