NATIONAL COUNCIL ON COMPENSA-TION INSURANCE et al.

v.

SUPERINTENDENT OF INSURANCE et al.

Supreme Judicial Court of Maine.

Argued Nov. 10, 1987.
Reargued Jan. 14, 1988.
Decided March 4, 1988.

Harold Pachios (orally), Marc B. LeDuc (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for Nat. Council on Compensation Ins.

Kevin M. Gillis (orally), Richardson & Troubh, Portland, Stephen A. Rusconi (orally), Boston, Mass., for Liberty Mut.

Bruce C. Gerrity (orally), Preti, Flaherty, Beliveau & Pachios, Augusta, for Home Ins. Co.

James E. Tierney, Atty. Gen., Linda M. Pistner (orally), Asst. Atty. Gen., Augusta, for Superintendent of Ins.

William C. Perkins (orally), William C. Black (orally), Public Advocate, Augusta, for Public Advocate.

Thomas R. Watson (orally), Patrick N. McTeague, McTeague, Higbee, Libner, Reitman, Macadam & Case, Topsham, for Maine AFL–CIO.

Albert G. Ayre (orally), Pierce, Atwood, Scribner, Allen Smith & Lancaster, Portland, for Maine Chamber of Commerce.

Before McKUSICK, C.J., and
NICHOLS, ROBERTS, WATHEN,
GLASSMAN, SCOLNIK and
CLIFFORD, JJ.

McKUSICK, Chief Justice.

The National Council on Compensation Insurance (NCCI),[1] two Liberty insurance companies [2] (Liberty), and The Home Insurance Company (Home) appeal from a Superior Court (Kennebec County) decision rejecting their challenge to the constitutionality in its operation of a 1985 statute that mandated an immediate reduction in workers' compensation insurance rates, required participation in an assigned risk pool, and placed a limit on future rate increases. While this appeal was pending, the legislature repealed the entire 1985 statute and substantially modified the Maine workers' compensation system in regard to both insurance rates and compensation benefit levels. As a result this appeal has become moot and must be dismissed.

In 1985, the legislature enacted 24–A.M.R.S.A. §§ 2331–2357, the Workers' Compensation Competitive Rating Act. P.L.1985, ch. 372, § B(5). Section 2355 of the Rating Act directed a reduction beginning on August 1, 1985, of at least 8% in workers' compensation insurance rates. Section 2355 also barred any increase in those rates until January 1, 1987, and limited rate increases in 1987 and 1988 to not more than 10% over the next preceding year's rates. Pursuant to section 2355, the Superintendent of Insurance issued an interim order on August 27, 1985, reducing rates by 8% retroactive to August 1, 1985. Following lengthy hearings, the Superintendent issued a final order on October 10, 1986, confirming the ⸱8% reduction contained in the interim order.

By section 2350, the 1985 Rating Act also established a "residual market mechanism" or assigned risk pool to provide workers' compensation insurance coverage for employers unable to procure insurance in the voluntary market. 24–A M.R.S.A. § 2350 (eff. January 1, 1986). The section required all insurers authorized to write workers' compensation insurance in Maine to participate in the assigned risk pool. Id. § 2350(1)(A). Until September 1, 1986, under a plan administered by NCCI, servicing carriers wrote policies for the assigned risk pool on a voluntary basis. As of September 1, 1986, however, too few carriers were voluntarily participating in the assigned risk pool to afford coverage for all employers. Following refusal by NCCI to assign

---

1. NCCI is a rating organization, licensed under 24–A M.R.S.A. § 2310 (1974 & Supp.1987), that is authorized to act on behalf of its insurer members. *See National Council on Compensation Ins. v. Superintendent of Ins.,* 481 A.2d 775, 778 (Me.1984).

2. Appellants Liberty Mutual Insurance Company and Liberty Mutual Fire Insurance Company will in this opinion be referred to jointly as "Liberty."

carriers to the assigned risk pool on an involuntary basis, the Superintendent after hearing, on September 30, 1986, entered a mandatory assignment order, by which the Superintendent took over administration of the assigned risk pool and made mandatory assignments of carriers to the pool based on the carriers' respective shares of the voluntary market over the preceding three-year period. The Superintendent excluded from the mandatory assignment order any carrier that had less than a 1% market share or was in perilous financial condition.

NCCI with Liberty joining as a co-plaintiff filed in the Superior Court a timely complaint (hereafter "the NCCI complaint") seeking judicial review of the Superintendent's 8% reduction orders. The NCCI complaint alleged that section 2355 violated constitutional due process by imposing confiscatory rates while denying the insurers an opportunity to apply for rate increases necessary to ensure a fair return. That complaint, in addition to seeking a declaratory judgment that section 2355 was unconstitutional, sought 1) an M.R.Civ.P. 80C order reversing the Superintendent's 8% reduction orders or alternatively directing the Superintendent after hearing to permit workers' compensation rates to be raised to an "adequate level," and 2) an injunction against the Superintendent's exercising any of the powers or duties respecting the enforcement of the rate reduction and rate limits of section 2355.

Liberty and Home in timely fashion filed in the Superior Court separate, but similar complaints (hereafter "the Liberty/Home complaints") seeking judicial review of the Superintendent's mandatory assignment order of September 30, 1986.[3] The Liberty/Home complaints alleged that the mandatory assignment order by requiring those insurers to provide coverage to assigned risk employers at rates reduced and limited as mandated by section 2355 result-

ed in the unconstitutional taking of the insurers' property without due process of law. Those complaints asked the Superior Court to reverse the mandatory assignment order under M.R.Civ.P. 80C and to enjoin the Superintendent from putting into effect any order pursuant to section 2350 requiring the insurers to accept assigned risks in the future.

The Superior Court heard the challenges to the constitutionality of section 2355 and the mandatory assignment order in a single consolidated action.[4] After hearings that concluded on March 2, 1987, the Superior Court on May 14, 1987, rejected the parties' constitutional challenges, affirmed the Superintendent's 8% reduction and mandatory assignment orders, and denied all requested injunctive relief. NCCI, Liberty, and Home then appealed to the Law Court. We heard oral argument on the merits of the appeal on November 10, 1987.

On November 20, 1987, the legislature enacted as emergency legislation P.L.1987, chs. 559–560, An Act to Improve the Maine Workers' Compensation System. The 1987 Act repealed the 1985 Rating Act, 24–A M.R.S.A. §§ 2331–2357, in its entirety. In addition, the 1987 Act comprehensively overhauled the Maine workers' compensation system, both in the setting of insurance rates and the eligibility for and the amount of workers' compensation benefits. At our request, the parties filed supplemental briefs on the question whether the appeal was mooted by the repeal of section 2355 and the enactment of the other provisions of the 1987 Act. We heard oral argument on the mootness issue on January 14, 1988.

I.

The gravamen of the NCCI complaint was that the limits imposed by section 2355 upon workers' compensation insurance rates resulted in those rates being confisca-

---

**3.** Peerless Insurance Company filed a similar complaint and participated in the consolidated proceeding in the Superior Court, but has not appealed.

**4.** The consolidated action also included complaints filed by the Maine Chamber of Com-

merce and Industry and the Public Advocate objecting to the Superintendent's refusal to reduce the rates by more than 8%. The AFL–CIO joined the consolidated action as an intervenor. None of those parties appeal the Superior Court judgment.

tory when matched against the benefits the Workers' Compensation Act requires insurers to underwrite for injured workers. Asking for a declaration of that confiscation, the complaint sought only prospective relief; namely, an injunction against the enforcement by the Superintendent of the section 2355 limits on insurance rates along with a reversal of his 8% reduction order or alternatively a remand to the Superintendent for a new rate inquiry. That same confiscation allegedly produced by section 2355 when applied to the then existing workers' compensation benefit levels was also at the heart of the Liberty/Home complaints challenging the validity of the Superintendent's mandatory assignment order. The Liberty/Home complaints also sought only prospective relief; namely, an injunction against the Superintendent's requiring those companies to participate in the assigned risk pool at the section 2355 rates. Since the NCCI and the Liberty/Home complaints raised a factual issue of confiscation, the Superior Court hearings made an evidentiary record for the purpose of establishing the expected return to the insurers from the rates imposed under section 2355 as applied to the costs of the workers' compensation benefits as then prescribed by statute. That evidentiary record closed more than a year ago.

On their appeal, NCCI and the two insurers ask that we hold that the Superior Court erred in refusing to enjoin the Superintendent from enforcing section 2355 and from making mandatory assignments to the insurers from the assigned risk pool. The repeal of section 2355 and the major overhaul of the workers' compensation system affected both the premium rates that workers' compensation carriers may charge and the cost to those carriers of the workers' compensation benefits underwritten by them. As of November 20, 1987, the legislature has returned to the Superintendent the task of fixing "just and reasonable" rates, unrestricted by any legislatively imposed maxima and "[b]ased only on a just and reasonable profit." P.L.1987, ch. 559, § 4. Simultaneously, the legislature has changed the cost factor in the equation determining insurance companies' profits by significantly modifying eligibility requirements and the allowable amounts of benefits required to be paid to injured workers under the Workers' Compensation Act.[5] Those changes in eligibility requirements and benefit levels apply to all injuries occurring on or after the effective date of November 20, 1987. P.L.1987, ch. 560, § 12. The overall consequence of those changes is to reduce, in an amount yet to be determined, the cost to insurance companies of performing on their contractual obligations under policies that either were outstanding on that date or are issued thereafter.

We are presented with a classic example of an appeal that has become moot. It is a "firmly entrenched doctrine that a court should decline to decide issues which ... by virtue of legally valid and recognizable supervening circumstances have lost their controversial vitality...." *Good Will Home Ass'n v. Erwin*, 285 A.2d 374, 379 (Me. 1971). *See also Graffam v. Wray*, 437 A.2d 627, 631 (Me.1981); *Taylor v. Commissioner of Mental Health and Mental Retardation*, 431 A.2d 1304, 1306–07 (Me.1981). The question posed by this appeal whether the Superior Court erred by refusing to enjoin the Superintendent's enforcement of the rate reduction and limits imposed by section 2355 and his mandatory assignments under those rates has no continuing vitality. *See Taxpayers for the Animas–La Plata Referendum v. Animas–La Plata Water Conservancy District*, 739 F.2d 1472, 1478–79 (10th Cir.1984). Since the

5. *See, e.g.,* P.L.1987, ch. 559, § 21 (automatic suspension of benefits if employee refuses to allow employer access to physician's records); *id.* § 22 (commission to set maximum charges for medical services); *id.* § 27 (compensation for total incapacity not subject to annual adjustments until third anniversary of injury); *id.* § 30 (compensation for partial incapacity not payable for longer than 400 weeks after maximum medical improvement); *id.* § 33 (commission to set schedule for determining existence and degree of permanent impairment based on generally accepted medical standards); *id.* § 38 (fixed period of formal, mandatory retraining with benefits terminating 6 months after retaining program completed).

repeal of section 2355 on November 20, 1987, any injunction issued against the Superintendent's enforcement of that defunct statute would be meaningless and of no practical consequence whatever.[6] Furthermore, the evidentiary record before us on appeal, which addressed the factual issue of confiscation as it was claimed to exist prior to the final hearing over a year ago, reflects costs to the insurers of a statutory benefit program that has now been superseded by a presumably less costly system. Thus, anything that we could decide on this appeal would be an answer only to a question that existed prior to November 20, 1987, but on that date became thereafter academic. Considerations of judicial restraint dictate that we not engage in such an academic exercise. *See Graffam v. Wray*, 437 A.2d at 631.

## II.

In an attempt to avoid application of the rule of mootness, appellants raise an assortment of arguments. We find none of those arguments persuasive.

Appellants first contend that they are still entitled to an injunction against the enforcement of the section 2355 limitations on rates. They base their contention on the fact that the section 2355 rates, which they claim are confiscatory, will continue to prevail in the period until the Superintendent authorizes new rates in a rate proceeding brought under the 1987 Act. This contention is quickly answered. Whether any confiscation exists in this period of "regulatory lag" is impossible of determination from the record on appeal, which reflects the costs of a compensation benefit scheme that was superseded as of November 20, 1987.

Appellants next contend that the insurers may want to claim compensatory relief from the State or from their policyholders on account of the allegedly confiscatory rates imposed in the past under the now-repealed section 2355. The insurers, however, neither pleaded nor tried any such compensatory claims in the Superior Court and they should not be heard in doing so for the first time on appeal in this case. *See Cuthbertson v. Clark Equip. Co.*, 448 A.2d 315, 317 n. 1 (Me.1982); *Cannan v. Bob Chambers Ford*, 432 A.2d 387, 388–89 (Me.1981).

Appellants also fail in their attempt to bring themselves within any of the special, limited exceptions to the rule of mootness that we recognized in *State v. Gleason*, 404 A.2d 573 (Me.1979):

First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public. Third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature, may appropriately be decided.

*Id.* at 578 (citations omitted).

First, we are told that a decision on the merits of the present appeal would aid in the disposition of separate litigation now pending in the Superior Court involving efforts of Liberty and Home to withdraw from writing workers' compensation policies in Maine. The insurers, however, provide us with no information that shows that

---

**6.** Liberty and Home did seek an injunction against the Superintendent's mandatory assignment order for a further reason that has not been mooted by supervening circumstances. They contended that that part of the order that excluded from assignments any carrier that had less than a 1% market share or was in perilous financial condition, violated the requirement of 24–A M.R.S.A. § 2350 that "[a]ll insurers authorized to write workers' compensation and employers' liability insurance in this State shall participate in the [assigned risk] plan." That claim renewed on appeal has not been mooted (despite the repeal of section 2350) because the residual market mechanism created by the Superintendent's mandatory assignment order continues to operate until the Superintendent modifies or suspends his order. *See* P.L.1987, ch. 559, § 7. We, however, find no merit in the insurers' argument. The Superintendent has a general duty to enforce the Insurance Code, 24–A M.R.S.A. §§ 211, 212 (1974); and we "give the Superintendent's construction of the statute great deference ... unless [it] plainly compels a contrary result." *York Mut. Ins. Co. v. Superintendent of Ins.*, 485 A.2d 239, 241 (Me.1984).

a decision on the merits of this appeal would have anything more than "conjectural and insubstantial consequences" on that other litigation. *See Bennett v. State,* 289 A.2d 28, 32 (Me.1972). That is not enough to prevent mootness.

Second, we are told that the present appeal, although mooted, involves an issue of great public importance that should "be addressed for the future guidance of the bar and of the public." *State v. Gleason,* 404 A.2d at 578. Despite the great public interest in the effectiveness and stability of the Maine workers' compensation system, the public interest in the constitutional validity, at some time at least a year ago, of rates set under a now-repealed statute and previously applicable to no longer existing circumstances is negligible, if not nonexistent.

Finally, we are told that the present appeal, although mooted, should be decided under the "capable of repetition, yet evading review" exception to the mootness rule. *See id.* This appeal, however, is not appropriate for application of that narrow exception. The inquiry is not whether the activity in this particular appeal ended before it was fully litigated but rather whether the activity itself is by nature so short in duration that it will not be fully litigated before the objected to activity ends. *Conyers v. Reagan,* 765 F.2d 1124, 1128 (D.C.Cir.1985). Only speculation in the extreme would suggest that the same concatenation of circumstances from which this litigation arose will repeat itself. *See Taxpayers for Animas–La Plata Referendum,* 739 F.2d at 1479. The mere theoretical possibility of repetition is not enough. 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3533.3, at 297 (1984).

In these circumstances we have no reason to relax the well-established requirement that an appeal present a continuing and vital controversy before we render a decision on the merits. There is no relief of practical consequence that we can afford appellants on this appeal. Deciding upon the constitutionality of rates set under a now-repealed statute, on an evidentiary record of underwriting costs under a now-

superseded benefit scheme, would be a purely academic exercise. It would run counter to the spirit, if not the letter, of the constitutional prohibition against rendering advisory opinions except as required by Me. Const. art. VI, § 3. *See Perry v. Hartford Accident and Indemnity Co.,* 481 A.2d 133, 136 (Me.1984). Governing principles of appellate adjudication require dismissal of this appeal for mootness.

The entry is:

Appeal dismissed.

All concurring.